E-FILED; Anne Arundel Circuit Court
Docket: 6/4/2021 9:33 AM; Submission: 6/4/2021 9:33 AM

## IN THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY, MARYLAND

| | |
|---|---|
| **WILLIAM ROBINSON**<br>11701 Cygnet Drive<br>Waldorf, MD 20601<br><br>And<br><br>**MICHAEL T. PARKER**<br>**PATRICE PARKER**<br>6714 Berkshire Dr.<br>Temple Hills, MD 20748-4029<br><br>    *On behalf of themselves individually and*<br>    *similarly situated persons.*<br><br>    Plaintiffs<br><br>v.<br><br>**SELECT PORTFOLIO SERVICING, INC.**<br>3815 South West Temple<br>Salt Lake City, Utah<br><u>SERVE ON:</u><br>CSC-Lawyers Incorporating Service Company, Resident Agent<br>7 St. Paul Street, Suite 820<br>Baltimore, MD 21202<br><br>    Defendant | C-02-CV-21-000748<br><br>Civil Case: _____ |

### CLASS ACTION COMPLAINT
### &
### REQUEST FOR JURY TRIAL

Plaintiffs William Robinson ("Robinson") and Michael and Patrice Parker ("Mr. & Mrs. Parker" or "the Parkers")(collectively "Named Plaintiffs"), on their individual behalf and on behalf

of similarly situated individuals defined *infra*, by their attorneys, Phillip R. Robinson and the Consumer Law Center LLC and pursuant to MD. RULE 2-231, sues Select Portfolio Servicing, Inc. ("**SPS**" or "**Defendant**"), on behalf of themselves and similarly situated persons, demands a trial by Jury on all counts for which a right to trial by jury is allowed and, in support of their Class Action Complaint, states:

<u>INTRODUCTION</u>

1.      In instances, such as the underlying matters involving SPS, the mortgage servicer places its interest and pattern of unsafe and unsound mortgage service practices above the remedial rights of homeowners and consumers. Moreover, SPS unfairly and deceptively ignores its statutory and contractual duties including those which were agreed to as part of its license to legally operate in the State of Maryland.

2.      In this action SPS has utilized a method of collection which imposes certain fees and charges onto the residential mortgage accounts of the Named Plaintiffs and the putative class members they seek to represent for accepting payments by telephone and/or by the Internet. These so-called convenience fees to accept payments of consumer debts by telephone or over the Internet are not authorized by the documents governing the Named Plaintiffs' loans, Maryland law, and the putative class members' loans. In addition,

      a.      Since the consumer debts subject to this action involve mortgage loans and related real property in the State of Maryland, the statute of frauds that applies in Maryland does not permit the Defendant to impose and charge fees that are not memorialized in a written agreement. Further, as a licensed Maryland mortgage lender SPS is barred from altering the agreements governing its relationships with the Named Plaintiffs and the putative class members unless any such agreement is in writing and executed by all the parties. Md. Code Regs. 09.03.06.08.

b.      The so-called convenience fees are an unlawful profit center imposed and collected by SPS and are not simply pass-through costs to the Named Plaintiffs and the putative class members. Rather, they represent materially excessive sums and fees over SPS' actual costs to accept a residential, mortgage payment by electronic means over the phone or over the Internet. Specifically, SPS' actual costs to its various vendors who facilitate the telephonic and electronic payments charge pennies for the transaction, but SPS imposes fees ranging from 10 to 25 times more than its actual costs.

3.      In January 2021, a bipartisian coalition of 33 state attorneys general, including Maryland Attorney General Brian Frosh, publically opposed a mortgage servicer's practice of charging fees for accepting payments by phone or by the Internet. That coalition stated that practice is unfair and deceptive when the servicer does not charge fees for other methods of collection. In announcing his opposition to the practice, AG Frosh explained the massive profit center as follows:

> For years, PHH charged nearly one million homeowners an illegal fee – ranging from $7.50 to $17.50 – each time a homeowner made a monthly mortgage payment online or by phone. Nowhere in these homeowners' mortgage contracts is there authorization for such fees and PHH does not charge "processing" fees for other customers, including those who pay by check or those who set up automatic debit payments.

Press Release (January 29, 2021), Attorney General Frosh Joins Bipartisan Coalition Fighting to Protect Nearly One Million Homeowners from Unlawful Fees Mortgage Servicing Class Action Settlement Violates Most States' Laws and Provides Windfall for Mortgage Servicer Instead of Homeowners (available at https://www.marylandattorneygeneral.gov/press/2021/012921.pdf) (last visited May 19, 2021).

4.      As a result of SPS' practices described herein, Robinson, the Parkers, and the putative class members throughout the State of Maryland and Anne Arundel County have sustained

3

damages and losses since their rights and protections under the law have been disregarded by SPS. These damages and losses include the imposition and collection of fees by SPS which it has no right to impose and collect but were paid by Robinson, the Parkers, and the putative class members in reliance to SPS's representations that it had the right to do so when it did not.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction asserted for the claims herein because SPS transacts business, performs work in, and has interest in real property, and provides services in Maryland and Anne Arundel County, Maryland.   *See e.g. Pacific Mortg. and Inv. Group, Ltd. v. Horn*, 100 Md.App. 311, 324 (Md.App.,1994)(a person who "buys and sells [] mortgage liens has done more than merely transacted business…but has, in fact, carried on a regular business").

6.     This Court also has jurisdiction for the claims asserted because the injuries caused by SPS to Robinson, the Parkers, and the putative class members and certain of the putative class members occurred in Maryland.

7.     Further, SPS owns real property, or has an interest in real property in the State of Maryland and Anne Arundel County, thereby subjecting itself to the jurisdiction of this Court.

## PARTIES

8.     Plaintiff William Robinson ("Robinson") is a natural person who owns the real property in Charles County that is his home ("Robinson Property").   Robinson is also the borrower on the mortgage loan subject to this action which is associated with the Robinson Property and was utilized entirely for personal, consumer purposes ("Robinson Loan").   The Robinson Loan is a federally related mortgage.

9.     Plaintiffs Michael and Patrice Parker ("Mr. & Mrs. Parker" or "the Parkers") are natural persons who own the real property in Prince George's County that is their home ("Parker

4

Property"). The Parkers are also the borrowers on the mortgage loan subject to this action which is associated with the Parker Property and was utilized entirely for personal, consumer purposes ("Parker Loan"). The Parker Loan is a federally related mortgage.

10.     Defendant Select Portfolio Servicing, Inc. ("SPS" or "Defendant") is a collector and a licensed mortgage lender/servicer in the State of Maryland (NMLS Lic. No. 14271). In addition:

a.     SPS is a wholly-owned subsidiary of SPS Holding Corp. which is a publically traded corporation.  In turn, SPS Holding Corp. is a wholly owned by Credit Suisse (U.S.A.) Inc. which is a not a publically traded corporation.

b.     SPS qualifies as a mortgage servicer pursuant to 12 C.F.R. § 1024.2 since it holds and is responsible for the servicing Named Plaintiffs' federally related mortgage loans (as that term is defined by 12 U.S.C.A. § 2602(1).

c.     In relation to the Robinson Loan, Parker Loan, and the loans of certain putative class members, SPS qualifies as a mortgage lender/servicer pursuant to the Maryland Mortgage Lender Law, Fin. Inst. § 11-501, *et seq.* ("MMLL").

d.     SPS is a collector as defined by COM. LAW §14-201(b) and is person subject to the requirements of the Maryland Consumer Protection Act, COM. LAW §§ 13-101 *et seq. and* it collects on behalf of mortgage loan owners from whom it is paid a servicing fee for its collection services.  Neither the Named Plaintiffs nor the putative class members are parties to those agreements.

### FACTUAL ALLEGATIONS

#### *General Allegations About SPS' Knowledge*

11.     All persons, including licensed mortgage lender/servicers in the State of Maryland like SPS, are expected to know the law—including the laws governing their activities.  As part of its license to even conduct business in the State of Maryland, SPS "has a duty of good faith and fair dealing in communications, transactions, and course of dealings with a borrower in connection with the advertisement, solicitation, making, servicing, purchase, or sale of any mortgage loan." MD. CODE REGS. 09.03.06.20. The Parkers, Robinson, and other Maryland borrowers like them are third party beneficiaries of MD. CODE REGS. 09.03.06.20.

12.     The Court of Appeals in 2005 recognized that a real estate professional who had no direct communication with a borrower nevertheless had a duty to the consumer under the Maryland Consumer Protection Act and Maryland common law to make a "reasonable investigation" of the true facts in the real estate transaction on which the borrower (and other parties) would rely in order to complete the transaction. *Hoffman v. Stamper*, 385 Md. 1, 867 A.2d 276 (2005).  This duty of care applies to SPS as its work involves secured, consumer mortgage loans subject to Maryland and Federal laws those discussed herein.

13.     Pursuant to 12 C.F.R. § 1024.35(b)(5), SPS is not permitted to "impos[e]… a fee or charge that the servicer lacks a reasonable basis to impose upon the borrower." It is also unreasonable and a violation of its duties for SPS to impose and collect sums never properly agreed to by the borrower pursuant to Md. Code Regs. 09.03.06.08.

14.     SPS has duties to the Named Plaintiffs and the putative class members to (i) take appropriate steps to avoid foreclosure (and not churn the collection of fees and costs not permitted under the law or actually incurred) and (ii) comply with any other obligation(s) found by the Bureau of Consumer Financial Protection (by regulation) to be appropriate to carry out the consumer protection purposes of 12 U.S.C.A. § 2605. Amongst these obligations are the servicer's duties to

6

comply with state laws and regulations that are not expressly preempted by RESPA; in other words, Congress and the CFPB expressly intended for RESPA to work in concert with state regulation. *See e.g.* 12 U.S.C.A. § 2605(h) and 12 C.F.R. § 1024.33(d) (expressly limiting preemption to certain notice issues).

15.     The Maryland Mortgage Fraud Protection Act, REAL PROP. § 7-401, *et seq.*, establishes a statutory duty upon SPS to disclose to mortgage borrowers, homeowners, and its predecessor servicers with respect to the mortgage lending process in an honest and truthful manner. *Ademiluyi v. PennyMac Mortgage Inv. Trust Holdings I, LLC*, 929 F. Supp. 2d 502, 531 (D. Md. 2013); *Castle v. Capital One, N.A.*, No. CIV.A. WMN-13-1830, 2014 WL 176790, at *5 (D. Md. Jan. 15, 2014; *Stovall v. SunTrust Mortgage, Inc.*, No. CIV.A. RDB-10-2836, 2011 WL 4402680 (D. Md. Sept. 20, 2011).

### Factual Allegations Relevant to Robinson

16.     On or about June 15, 2004 Robinson refinanced the Robinson Property, his home and the Robinson Property, with the now failed BankUnited FSB ("Robinson Loan"). He refinanced the loan for personal, consumer purposes changing his then existing loan terms. The proceeds of this refinance were used entirely for these personal, consumer purposes.

17.     On December 14, 2014 Ventures Trust acquired by assignment and transfer all of BankUnited, NA's right, title, interest in and to said the Robinson Loan. This transfer was memorized in an Assignment of Deed of Trust (Book 08828/Page 0125) in an instrument recorded in the land records of Charles County, Maryland.

18.     While Ventures Trust was the owner of the Robinson Loan it engaged a company known as BSI as its collector and mortgage servicer related to the Robinson Loan. BSI also on behalf of Ventures Trust agreed to modify the Robinson Loan which capitalized sums claimed due

by BSI on behalf of Ventures Trust including alleged interest, fees, and costs which amount to profits claimed by Ventures Trust. The BSI-Ventures Trust modification did not authorize BSI, Ventures Trust or any of their assignees to charge Robinson a fee for accepting payments by the Internet or by telephone.

19.     Ventures Trust's affiliate transferred ownership in the Robinson Loan to DLJ Mortgage Capital, Inc. on February 11, 2019.  Thereafter, ownership of the loan transferred again to CSM 2020-WL1 effective February 26, 2020 and then again back to DLJ Mortgage Capital, Inc. on November 20, 2020.

20.     Effective March 1, 2019 SPS became the collector and servicer on behalf of the owner(s) of the Robinson Loan.   SPS is not a party to the Robinson Loan.  It is an agent for the owner(s) who collects payments due and owing on the Robinson Loan.

21.     Robinson has never entered into any written agreement with any of the owners of his mortgage loans or SPS to authorize the payment of convenience fees for payments made by telephone or by the Interest.

22.     Notwithstanding there is no written contract between Robinson any of the owners of his mortgage loans expressly permitting charges to Robinson for payments made by phone or the Internet, on multiple dates including the following, SPS charged Robinson a convenience fee for taking his payment for the Robinson Loan on behalf of the owner by phone or over the Internet: April 15, 2019, May 10, 2019, June 17, 2019, July 12, 2019, August 16, 2019, September 16, 2019, October 15, 2019, November 15, 2019, December 16, 2019, January 17, 2020, February 14, 2020, and March 13, 2020.

8

23.     Robinson believed SPS' representations that the convenience fees it was charging him for making payments by phone or over the Internet were lawful, due, and owing. His payments of the fees further demonstrate his reasonable reliance upon SPS' representations in this regard.

24.     Notwithstanding that there is no written agreement between Robinson and SPS to impose and collect convenience fees from Robinson, SPS has knowingly done so without the right to do so.

25.     Robinson has been damaged and sustained losses as a proximate cause of SPS' improper, unfair, and/or deceptive practices in relation its method of collection of the Robinson Loan by imposing convenience fees for payments made by telephone or the Internet that are not expressly authorized under state law or the Robinson Loan documents.

### Factual Allegations Relevant to the Parkers

26.     The Parkers acquired the Parker Property on or about December 17, 1993.

27.     On or about December 7, 2007 the Parkers' refinanced their prior mortgage loan with Homecomings Financial Network, Inc. ("HFN") related to the Parker Property by obtaining an extension of credit for the sum of $193,482.00 from HFN ("Parker Loan"). HFN shortly after December 7, 2007 assigned the Parker Loan to the Federal National Mortgage Association ("Fannie Mae"). Fannie Mae assigned the Parker Loan to Goldman Sachs on August 13, 2019. At the time of the assignment, Goldman Sachs authorized Nationstar Mortgage LLC d/b/a Mr. Cooper for collection but thereafter engaged Shellpoint to become the collector as of October 4, 2019.

28.     Effective March 1, 2021, SPS became the collector and mortgage loan servicer of the Parker Loan. SPS did not send to the Parkers the correspondence required by COM. LAW § 13-316(b).

9

29.     Sometime before March 29, 2021, the Parker Loan may have been acquired by Global Structured Finance – GS Mortgage-Backed Securities Trust 2021-RPL1 as the owner of the Parker Loan.  This belief is based on written correspondence from SPS dated March 29, 2021 so stating this fact.  However, on April 2, 2021, Shellpoint wrote to the Parkers and represented that the Parker Loan was then owned by Goldman Sachs.

30.     The Parkers have never entered into any written agreement with any of the owners of the Parker Loan or SPS to authorize the payment of convenience fees for payments made by telephone or by the Internet.

31.     Notwithstanding there is no written contract between the Parkers and any of the owners of their mortgage loan expressly permitting charges to the Parkers for payments made by phone or the Internet, on multiple dates including the following, SPS charged the Parkers a convenience fee for taking their payment for the Parker Loan on behalf of the owner by phone or over the Internet:  April 5, 2021 and May 12, 2021.

32.     Upon acquiring the collection rights to the Parker Loan, SPS also claimed a right to collect from the Parkers certain fees and charges that its predecessors had waived and did not timely seek to collect from the Parkers and were otherwise uncollectable and abandoned.  SPS essentially claimed greater rights than its predecessor(s) had to give them which is not permitted under Maryland law.  Specifically, in written correspondence in a monthly periodic statement dated March 9, 2021 to the Parkers, SPS unfairly and deceptively claimed a right to collect $952.60 in "Unpaid Late Charges" from the Parkers which were not due and owing from the Parkers and had been waived by SPS' predecessors.   SPS has repeated this false and deceptive statement to the Parkers on its subsequent periodic statements dated April 15, 2021 and May 14, 2021.

10

33.     SPS also claimed unfairly and deceptively in the monthly periodic statement dated March 9, 2021 to the Parkers that they were past due for two mortgage payments when in fact they were not passed due and were current on the Parker Loan.

34.     SPS intended for the Parkers to rely upon its statements to them in the monthly periodic statements dated March 9, 2021, April 15, 2021, and May 14, 2021 to the Parkers since it is required by Federal and State law to provide accurate statements to the Parkers (and similar borrowers) and it has never sought to correct its errors on the statement.

35.     The Parkers believed SPS' representations that the convenience fees it was charging them for making payments by phone or over the Internet were due and owing.  Their payments of the fees further demonstrate the reliance upon SPS that they placed in this regard.

36.     Notwithstanding that there is no written agreement between the Parkers and SPS to impose and collect convenience fees from the Parkers, SPS has knowingly done so without the right to do so.

37.     The Parkers have been damaged and sustained losses as a proximate cause of SPS' improper, unfair, and/or deceptive practices in relation its method of collection of the Parker Loan by imposing convenience fees for payments that are not expressly authorized under state law or the Parker Loan documents.

38.     The Parkers have also been damaged and sustained losses as a proximate cause of SPS' improper, unfair, and/or deceptive practices in relation its method of collection of the Parker Loan by its attempt to collect purported late fees from them that are not due and owing on the Parker Loan and otherwise have been waived by its predecessors.  By claiming a right to such improper fees SPS has wrongfully infected the Parker Loan for additional sums which has caused the Parkers with emotional distress with physical injury and manifestations as a result of their

reliance that SPS actually believes they owed the waived sums. Included among those physically

injuries are anxiety that SPS will add other improper sums to the Parker Loan that are not owed

and worry, anger, and frustration that SPS will forestall the Parkers' efforts to refinance the Parker

Loan by making false statements to prospective lenders that they owe late fees that are not owed.

The total sum of damages, losses, costs, and attorney fees and in controversy related to the Parkers'

claim(s) related to SPS' attempt to collect waived late fees is no more than $30,000.00 combined

for the Parkers (individually).

**CLASS ALLEGATIONS**

39.     The Named Plaintiffs brings certain claims, *infra*, on behalf of classes of similarly

situated persons related to Defendant SPS under MD. RULE 2-231 defined as follows:

         a.     **Maryland Class:** Robinson and the Parkers propose, as the definition of

the Maryland Class, that it be defined as follows:

> All individuals in Maryland who since October 1, 2018 (i) paid a "convenience fee"
> (ii) collected in whole or in part by SPS, and (iii) in order to make a payment on a
> residential mortgage debt by telephone or by Internet.

         a.     **Waived Fee Class:** The Parkers further propose, as the definition of the

Waived Fee Class, that it be defined as follows:

> All individuals in Maryland who in the three years prior to the commencement of
> this action (i) had SPS acquire the collection or servicing rights of their residential,
> mortgage loan and (ii) SPS communicated in its first periodic statement to them a
> right to collect fees that had accrued before the servicing transfer date.

40.     Robinson and the Parkers qualify as members of the Maryland Class. The Parkers

qualify as members of the Waived Fee Class. Robinson and the Parkers propose to be appointed

by the Court as the Named Plaintiffs for the Maryland Class. The Parkers also propose to be

appointed by the Court as the Named Plaintiffs for the Waived Fee Class.

41. Excluded from each of the putative classes are any person who falls within the definitions if the person is (i) an employee or independent contractor of SPS; (ii) a relative of an employee or independent contractor of the SPS; or (iii) an employee of the Court where this action is pending.

42. The Maryland Class and the Waived Fee Class definitions in ¶ 39 as limited by ¶ 41 may be amended or modified.

43. The particular members of the (i) Maryland Class and (ii) the Waived Fee Class are capable of being described without difficult managerial or administrative problems. The members of the putative classes are also readily identifiable from the information and records in the possession or control of SPS or its affiliates and agents and from public records. SPS is required to maintain this information for the entire class periods. *See e.g.* Md. Code Regs. 09.03.06.04.

44. The putative classes are sufficiently numerous and exceed more than fifty persons each, such that individual joinder of all members is impractical. This allegation is based on a data search of public records which identify public complaints have been filed against SPS showing that it collects upon and services more than fifty residential, mortgage loans in the State of Maryland.

45. There are questions of law and fact common to the (i) Maryland Class and (ii) the Waived Fee Class which predominate over any questions affecting only individual members of the putative classes. The wrongs alleged against SPS by the (i) Maryland Class and (ii) the Waived Fee Class members and the remedies sought by Named Plaintiffs and the putative class members against SPS are identical.

46. The common questions of law or fact for the Maryland Class include but are not limited to:

13

a.    Whether SPS qualifies as a "collector" as that term is defined under the MCDCA and is subject to the MCPA;

b.    Whether SPS' conduct, directly or indirectly, violated the MCDCA and MCPA;

c.    Whether Maryland law expressly authorizes SPS to impose and collect convenience fees from mortgage borrowers;

d.    Whether SPS is permitted to collect fees and charges from borrowers that are not expressly authorized by the standard and uniform contracts governing the class members' mortgage contracts;

e.    Whether is its unfair or deceptive for SPS to charge a fee for collection of certain methods of payment but not others when it contracts with the owners of the class members' loans for a 'servicing fee' to perform such services that includes the collection of mortgage payments;

f.    Whether SPS' practice of imposing and collecting convenience fees from the class members violates Md. Code Regs. 09.03.06.08(A);

g.    Whether the members of the class are entitled to the convenience fees collected from them as actual damages.

47.    The common questions of law or fact for the Waived Fee Class include but are not limited to:

a.    Whether SPS qualifies as a "collector" as that term is defined under the MCDCA and is subject to the MCPA;

b.    Whether SPS' conduct, directly or indirectly, violated the MCDCA and MCPA;

14

c.      Whether SPS may claim a right to collect alleged fees waived or abandoned by its predecessors from collection;

d.      Whether Maryland law permits SPS to attempt to collect or actually collection fees that are barred from collection by Maryland's three year statute of limitations;

e.      Whether is its unfair or deceptive for SPS to attempt to collect fees waived or abandoned by its predecessor(s) and/or are barred by the statute of limitations for the alledged payments; and

f.      Whether the members of the class are entitled to a judgment of liability against SPS for its violations of the MCDCA and MCPA in relation to the class members which leaves the class members the right to pursue damages they can prove in separate actions.

48.    SPS' defenses (which defenses are denied) would be typical or identical for each of the member of (i) Maryland Class and (ii) the Waived Fee Class will be based on the same legal and factual theories.

49.    Certification of (i) Maryland Class and (ii) the Waived Fee Class under MD. RULE 2-231 is appropriate as to the members of the putative classes in that common questions predominate over any individual questions and a class action is superior for the fair and efficient adjudication of this controversy.

50.    A class action will cause an orderly and expeditious administration of claims by the members of the (i) Maryland Class and (ii) the Waived Fee Class and economies of time, effort and expenses will be fostered and uniformity of decisions will be insured.

51.    The only individual questions concern the identification of members of (i) Maryland Class and (ii) the Waived Fee Class. This information can be determined by a ministerial

examination of public records or from SPS' business records or other sources, which are admissible as an exception to the hearsay rule and as a statement by a party.

52.     Robinson's and the Parkers' class claims are typical of the claims of the (i) Maryland Class and (ii) the Waived Fee Class members pursuant to MD. RULE 2-231 since they are based on and arise out of identical facts constituting the wrongful conduct of SPS (directly and indirectly).

53.     Robinson and the Parkers will also fairly and adequately represent and protect the interests of the (i) Maryland Class and (ii) the Waived Fee Class. Each are is similarly situated with, and has suffered similar injuries as, the putative classes they propose to represent. Each have also retained counsel experienced in consumer class actions including actions involving unlawful collection and mortgage servicing practices. Neither Robinson nor the Parkers have any interests which might cause them not to vigorously prosecute this action or are otherwise adverse to the interests of the members of the (i) Maryland Class and (ii) the Waived Fee Class. They feel that they and the putative class members have been wronged, wish to obtain redress of the wrong, and wants SPS stopped from failing to comply with its mandatory duties that form the basis of the class claims.

54.     The (i) Maryland Class and (ii) the Waived Fee Class members have suffered actual damages, losses, and harm similar those sustained by Robinson and the Parkers as described *supra*.

**COUNT I: <u>VIOLATIONS OF MARYLAND'S CONSUMER DEBT COLLECTION ACT ("MCDCA"), COM. LAW § 14-201, *et seq.*, & MARYLAND CONSUMER PROTECTION ACT ("MCPA"), COM. LAW §§ 13-101 *et seq.*</u>**
**(On behalf of the Plaintiffs Robinson and the Parkers Individually and on behalf of the Maryland Class)**

55.     Named Plaintiffs adopt by reference the factual allegations contained in the preceding paragraphs of this Complaint with the same effect as if herein fully set forth. This claim is

brought on behalf of Robinson and the Parkers individually and as the Named Plaintiffs on behalf of the Maryland Class against SPS.

56.     At all times described herein since October 1, 2018, SPS has acted as a collector by attempting utilizing methods of collection, directly and indirectly, upon alleged, invalid debts and sums claimed due from Robinson, the Parkers and the Maryland Class members arising out of consumer transactions—their mortgages loan used for personal, consumer purposes related to the Property. COM. LAW §14-201(b). In other words, SPS has used an improper method of collection for the purpose of churning unlawful fees and charges not owed or due.

57.     SPS is aware of the Federal and State laws governing its activities described herein but recklessly disregarded those laws and duties without any consideration of the negative conse-quences to Robinson, the Parkers, or the Maryland Class members respectively.

58.     SPS, directly and on behalf of others indirectly, also utilized methods of collection in relation to Robinson, the Parkers, and the Maryland Class members to impose unlawful con-venience fees for accepting payments by telephone or the Internet that violation of the terms of the documents governing their loans and Maryland law and regulation which do not expressly author-ize such fees.

59.     Maryland's debt collection and mortgage lending laws which outline SPS' duties under Maryland law do not permit SPS to utilize methods and means of collection not permitted by law or the relationship governing the parties. SPS knows the law. However, it knowingly and recklessly attempted to interfere or otherwise infect Robinson's, the Parkers', and the Maryland Class members' rights to impose fees for its method of collection by telephone or the Internet. By such acts SPS has engaged in conduct which violates §§ 804 through 812 of the Federal Fair Debt

Collection Practices Act including but not limited to 15 U.S.C. §§ 1692e, § 1692f. COM LAW §14-202(11).

60.     Alternatively to the claims stated in ¶ 59 *supra*, SPS' method of collection which directly and indirectly claims that Named Plaintiffs and the Maryland Class members are required to pay a convenience fee under Maryland law for making a payment on their mortgage payment over the telephone or by the Internet also violates COM. LAW § 14-202(8) when SPS knows such fees are unlawful in Maryland.

61.     SPS' violations of the MCDCA are also *per se* violations of the MCPA. COM. LAW § 13-301(14)(iii).

62.     The mortgage loan servicing and collection practices described herein by SPS in relation to Robinson, the Parkers, and the Maryland Class members concerning the imposition and collection of convenience fees for accepting payments from borrowers by telephone and/or the Internet as set forth herein, are governed by the Maryland Consumer Protection Act ("MCPA"), COM. LAW. § 13-101, *et seq.*

63.     COM. LAW. § 13-303 prohibits unfair or deceptive trade practices in the extension of consumer credit or collection of consumer debts. The collection and attempted collection of the convenience fees by SPS related to its consumer, debt collection practices by imposing and collecting unfair convenience fees involves both the extension of credit and the collection of debts.

64.     COM. LAW. § 13-303 also prohibits unfair or deceptive trade practices in the sale or provision of consumer services, such as those provided by SPS.

65.     The MCPA defines unfair or deceptive trade practices to include, *inter alia*, the following: (a) False, falsely disparaging, or misleading oral or written statement, visual description or other representation of any kind which has the capacity, tendency or effect of deceiving or

misleading consumers; and (b) Failure to state a material fact if the failure deceives or tends to deceive. COM. LAW §§13-301(1) and (3).

66.     SPS' acts and omissions described herein, and including but not limited to seeking and demanding sums not legally or contractually due from the Parkers, Robinson, and the Maryland Class members, constitute unfair and deceptive trade practices in violation of COM. LAW § 13-301(1)(3) and COM. LAW §§13-303(4)(5). Alternatively, SPS' inflated charges far in excess of its actual costs is unfair or deceptive.

67.     SPS' acts and omissions described herein, by charging for one method of collection of mortgage but not charging for other methods of payment for sums contractually due from the Parkers, Robinson, and the Maryland Class members, also constitute unfair and deceptive trade practices in violation of COM. LAW § 13-301(1)(3) and COM. LAW §§13-303(4)(5).

68.     The Parkers, Robinson, and the Maryland Class members reasonably relied upon the direct and indirect material acts and actions of SPS as exemplified *supra* and further demonstrated herein by their payment of the illegal convenience fees demanded by SPS. SPS' acts and omissions are simply unreasonable, abusive, unfair, and deceptive.

69.     Had SPS not acted unfairly and deceptively, the Parkers, Robinson, and the Maryland Class members would not have suffered the damages and losses they have described *supra.*

70.     Named Plaintiffs have pled sufficient facts to put SPS on notice as to the claims against it as exemplified *supra* (i.e. dates of key acts and representations of SPS and its agents and representatives and platforms; and the regulatory and statutory duties of SPS which it simply ignored and thereby infected the subject transactions to ensure harm and damage to the Parkers, Robinson, and the Maryland Class members).

19

**COUNT II: VIOLATIONS OF MARYLAND'S CONSUMER DEBT COLLECTION ACT ("MCDCA"), COM. LAW § 14-201, _et seq._, & MARYLAND CONSUMER PROTECTION ACT ("MCPA"), COM. LAW §§ 13-101 _et seq._**
**(On behalf of the Parkers Individually and on behalf of the Waived Fee Class members)**

71.     The Parkers adopt by reference the factual allegations contained in the preceding paragraphs of this Complaint with the same effect as if herein fully set forth. This claim is brought on behalf of the Parkers individually and as the Named Plaintiffs on behalf of the Waived Fee Class. For the claims herein, pursuant to Md. Rule 2-231(e) the Parkers' seek on behalf of the Waived Fee Class members a judgment of liability only to the class members against SPS's standard and uniform conduct in violation of the MCPA and MCDCA which will leave to the class members to pursue any damages they are entitled to as a matter of right that they can prove in separate, individual proceedings following the conclusion of this action. The Parkers do seek their individual damages in this action on these claims.

72.     At all times described herein since October 1, 2018, SPS has acted as a collector by attempting utilizing methods of collection, directly and indirectly, upon alleged, invalid debts and sums claimed due from the Parkers and the Waived Fee Class members arising out of consumer transactions—their mortgages loan used for personal, consumer purposes related to the Property. COM. LAW §14-201(b). In other words, SPS has used an improper method of collection for the purpose of claiming fees previously waived and uncollected by its predecessors are due from the Parkers and the Waived Fee Class members upon acquiring the collection rights on their consumer loans.

73.     SPS is aware of the Federal and State laws governing its activities described herein but recklessly disregarded those laws and duties without any consideration of the negative consequences to the Parkers or the Waived Fee Class members respectively.

20

74.     SPS, directly and on behalf of others indirectly, also utilized methods of collection in relation to the Parkers and the Waived Fee Class members to impose and seek and demand fees that had previously been waived and abandoned by its predecessors and otherwise were not collectable by virtue of the statute of limitations governing the specific fees.

75.     Maryland's debt collection and mortgage lending laws which outline SPS' duties under Maryland law do not permit SPS to utilize methods and means of collection not permitted by law or the relationship governing the parties.  SPS knows the law.  However, it knowingly and recklessly attempted to interfere or otherwise infect the Parkers' and the Waived Fee Class members' rights to impose fees that had been waived or abandoned by its predecessors.  SPS stands in the shoes of its predecessors and acquires no greater rights that its predecessors had to give it.  By such acts SPS has engaged in conduct which violates §§ 804 through 812 of the Federal Fair Debt Collection Practices Act including but not limited to 15 U.S.C. §§ 1692e, § 1692f. COM LAW §14-202(11).

76.     Alternatively to the claims stated in ¶ 75 *supra*, SPS directly and indirectly claims that the Parkers and the Waived Fee Class members are required to pay a fees under Maryland law that are not owed and were previously waived and abandoned also violates COM.LAW § 14-202(8).

77.     SPS' violations of the MCDCA are also *per se* violations of the MCPA. COM. LAW § 13-301(14)(iii).

78.     The mortgage loan servicing and collection practices described herein by SPS in relation to the Parkers and the Waived Fee Class members concerning the imposition and collection of fees waived and abandoned by its predecessors are governed by the Maryland Consumer Protection Act ("MCPA"), COM. LAW. § 13-101, *et seq.*

79.     COM. LAW. § 13-303 prohibits unfair or deceptive trade practices in the extension of consumer credit or collection of consumer debts. The collection and attempted collection of fees waived and abandoned by its predecessors by SPS related to its consumer, debt collection practices fees involves both the extension of credit and the collection of debts.

80.     COM. LAW. § 13-303 also prohibits unfair or deceptive trade practices in the sale or provision of consumer services, such as those provided by SPS.

81.     The MCPA defines unfair or deceptive trade practices to include, *inter alia*, the following: (a) False, falsely disparaging, or misleading oral or written statement, visual description or other representation of any kind which has the capacity, tendency or effect of deceiving or misleading consumers; and (b) Failure to state a material fact if the failure deceives or tends to deceive. COM. LAW §§13-301(1) and (3).

82.     SPS' acts and omissions described herein, and including but not limited to seeking and demanding sums not legally or contractually due from the Parkers and the Waived Fee Class members, constitute unfair and deceptive trade practices in violation of COM. LAW § 13-301(1)(3) and COM. LAW §§13-303(4)(5).

83.     SPS' acts and omissions described herein, by attempting to impose and actually imposing fee sums claimed due from the Parkers and the Waived Fee Class members also constitutes unfair and deceptive trade practices in violation of COM. LAW § 13-301(1)(3) and COM. LAW §§13-303(4)(5).

84.     SPS intended for the Parkers and the Waived Fee Class members to reasonably rely upon the direct and indirect material acts and actions of SPS as exemplified *supra* and its duty to send accurate periodic statements to the Parkers and Waived Fee Class members which have not

22

been corrected whatsoever. SPS' acts and omissions are simply unreasonable, abusive, unfair, and deceptive.

85.     Had SPS not acted unfairly and deceptively, the Parkers would not have suffered the damages and losses they have described *supra*. Upon information and believe, the members of the Waived Fee Class have sustained similar damages since no reasonable person would believe that a licensed mortgage lender and collector like SPS would erroneously claim sums due on a periodic statement since such statements are required to be truthful and accurate and SPS has taken no steps to correct its errors meaning it intends to claim a right to sums waived and abandoned by its predecessors (and allegedly remains due from the parkers and the Waived Fee Class members).

86.     The Parkers have pled sufficient facts to put SPS on notice as to the claims against it as exemplified *supra* (i.e. dates of key acts and representations of SPS and its agents and representatives and platforms; and the regulatory and statutory duties of SPS which it simply ignored and thereby infected the subject transactions to ensure harm and damage to the Parkers and the Waived Class members).

## PRAYER FOR RELIEF

A.  WHEREFORE, Pursuant to Count I of this Class Action Complaint, Robinson and the Parkers request the Court to certify the Maryland Class pursuant to MD. RULE 2-231(a), (b), (c)(3), and (d) appoint Robinson and the Parkers as class representatives and the undersigned counsel as Class Counsel;

B.  WHEREFORE, Pursuant to Count I of this Class Action Complaint, Named Plaintiffs and the Maryland Class members ask this Court to determine the issue of SPS' liability to the Maryland Class members under the

MCDCA and MCPA and award: (i) actual damages for its violations of COM LAW §14-202(8)(11), COM. LAW § 13-301(1)(3), and COM. LAW §§13-303(4)(5) pursuant to COM. LAW § 14-203 and COM. LAW § 14-408; (ii) reasonable attorney fees and reasonable costs as permitted and authorized by COM. LAW § 13-301(14)(iii) and COM. LAW § 13-408(b); and (iii) a total sum in excess of $75,000 (on a aggregated basis for the Named Plaintiffs and all the Maryland Class members).

C. WHEREFORE, Pursuant to Count II of this Class Action Complaint, the Parkers request the Court to certify the Waived Fee Class pursuant to MD. RULE 2-231(a), (b), (c)(3), (d), and (e) for the purpose of determining SPS's liability only to the Waived Fee Class, appointing the Parkers as class representatives, and the undersigned counsel as Class Counsel;

D. WHEREFORE, Pursuant to Count II of this Class Action Complaint, Named Plaintiffs and the Waived Fee Class members ask this Court to determine the issue of SPS' liability to the Waived Fee Class members under the MCDCA and MCPA and award: (i) reasonable attorney fees and reasonable costs as permitted and authorized by COM. LAW § 13-301(14)(iii) and COM. LAW § 13-408(b); (ii) actual damages and attorneys fees and costs to the Parkers for its violations of COM LAW §14-202(8)(11), COM. LAW § 13-301(1)(3), and COM. LAW §§13-303(4)(5) pursuant to COM. LAW § 14-203 and COM. LAW § 14-408 in a total sum of no more than $30,000.00 combined; and (iii) attorney fees and costs to the Waived Fee Class members in a total sum in excess of $75,000 (on a aggregated basis

for all Waived Class Fee Class members).

E. WHEREFORE, Named Plaintiff requests the Court provide such other or fur-

ther relief as the Court deems appropriate.

Respectfully submitted,

*/s/Phillip R. Robinson*
Phillip R. Robinson
Client Protection No. 0006210356
Consumer Law Center LLC
10125 Colesville Road, Suite 378
Silver Spring, MD 20901
Phone (301) 448-1304
phillip@marylandconsumer.com

*Attorneys for the Plaintiffs and Putative Class Members*

## RULED 20-201 CERTIFICATION

I hereby certify that this filing does not contain any restricted information.

*/s/Phillip R. Robinson*
Phillip R. Robinson
Client Protection No. 0006210356
Consumer Law Center LLC
10125 Colesville Road, Suite 378
Silver Spring, MD 20901
Phone (301) 448-1304
phillip@marylandconsumer.com

*Attorneys for the Plaintiffs and Putative Class Members*

**JURY DEMAND**

Plaintiffs, on their behalf and on behalf of the putative class members, by their under-

signed counsel requests a jury trial in this matter.

        *//s//Phillip R. Robinson*
        Phillip R. Robinson
        Client Protection No. 0006210356
        Consumer Law Center LLC
        10125 Colesville Road, Suite 378
        Silver Spring, MD  20901
        Phone (301) 448-1304
        phillip@marylandconsumer.com